SHARP, Judge.
Conner appeals from a final judgment rendered after a non-jury trial, which determined one key “factual question”: “the location of the Southern most corner of Government Lot 6” in Lake County, Florida. Based on the record we cannot agree with the trial court that the southern most corner of Government Lot 6 is as indicated on the survey prepared by Hall-Farner & Associates dated August, 1980; nor can we, based on this record, determine where the corner should have been located. We therefore reverse the judgment and remand this matter to the trial court for further proceedings.
At issue in this case is the proper location of a triangular piece of land described (in part) as follows:
That part of Government lot 6 in section 26, Township 19 South, Range 26 East, in Lake County, Florida, bounded and described as follows: Begin at the most Southerly corner of the said Government Lot 6, thence run in a Northerly direction along the Easterly line of the said Government Lot 6 a distance of 65 feet, thence run in a Westerly direction and parallel with the Southwesterly line of Government Lot 3 of the said section 26, if extended Westerly, to the waters of Lake Saunders; begin again at the point of beginning, thence run in a Northerly direction along the waters of Lake Saunders to intersect the line last described above.
This turns on where the beginning point of that description lies or where is the Southern-most point of Government Lot 6?
Appellant argued the Easterly line of Government Lot 6 and the Southwest line of Government Lot 3 met and intersected in the waters of Lake Saunders, according to an 1883 survey establishing Government lots around the lake. Appellees argued that the Easterly line of Government Lot Six never reached the Southwesterly line of Lot 3, but rather it ended at the shoreline of Lake Saunders, and its boundary was the meander line as established by the government survey. The following sketch, based on a summary of the exhibits, further illustrates the dispute in this case.
*195 [[Image here]]
Appellees presented the testimony of a surveyor, who had actually located the old government markers for Lots 3 and 6 using the original field notes. He testified that the appellee’s view was correct: the East line of Lot 6 stopped at the meander line, and did not extend into the old lake waters to intersect with the Southwest line of Government Lot 3. No contrary testimony was offered. The trial court concluded, as do we, that the meander line was the original boundary of both lots.
That, however, does not afford a basis to conclude that the 1883 meander line is still the boundary of Government Lot 6 or Government Lot 3 for that matter. Both lots were originally bordered by the waters of Lake Saunders. As the waters of that lake receded,[1] by operation presumably of natural causes, the boundaries of both Government Lot 3 and Lot 6 extended outward “ratably” to the waters of the lake. Connery v. Perdido Key, Inc., 270 So.2d 390 (Fla. 1st DCA 1972). Florida follows the common law view which vests title to lands formed by reliction in the owners of the abutting lands.[2]
Perhaps much of the accretion rule comes from the abhorrence of the law to leaving dangling pieces of land isolated. G. Thompson, 5A Commentaries on The Modern Law of Real Property, § 2563, at 41 (Repl.1978).
There was no testimony or survey in the record to show where the shoreline of Lake Saunders is presently located or where it was located in 1957 when the disputed piece of land was first conveyed by appellant’s *196 predecessor in title to appellee’s predecessor. Those facts are essential to determine, under the law of Florida, where the southern most point of the East line of Government Lot six was located in 1957. Further, we note from reading the testimony in this case the presence of other factors, such as adverse possession and acquiescence which may alter the strict application of the common law in this case. We therefore reverse the judgment and remand this matter to the trial court for further proceedings.
REVERSED AND REMANDED.
ORFINGER and COBB, JJ., concur.

. “Reliction” is the “process by which land formerly covered by water has become dry land by the imperceptible recession of the water....” F. Maloney, S. Plager, R. Ausness, B. Canter, Florida Water Law 1980, at 727 (1980).

. Id.; G. Thompson, 5A Commentaries On The Modern Law of Real Property, § 2563, at 39 (Repl.1978).